STATE *EX REL.* DE ZABALJAUREGUI v. COMMISSIONERS
OF PILOTAGE.

1. EXCEPTION too general.
2. PILOTS.—COMMISSIONERS OF PILOTAGE have the power to require a pilot to renew his bond and take out a new license whenever they deem proper; and after notice to a pilot of such requirement, he has no right to pilot a vessel without first complying therewith; and if he do so, he is not entitled to any compensation therefor; but that regularly licensed pilot who next "speaks" the vessel is entitled to the pilotage fees in and out.

Before BUCHANAN, J., Beaufort, April, 1901.    Reversed.

Petition for mandamus by Agapito de Zabaljauregui and John Murray against Geo. P. Elliott, C. F. Goodwin, B. B. Chadwick and Robert Mare, commissioners of pilotage for Beaufort.    From Circuit order directing the writ to issue, the commissioners appeal.

*Mr. W. J. Verdier,* for appellants, cites: Rev. Stat., 1364.

*Mr. Tho. Talbird,* contra (no citations).

February 25, 1902.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    The petitioners applied to his Honor, O. W. Buchanan, presiding Judge, for a writ of mandamus to compel the appellants, as the commissioners of pilotage for Beaufort, to pay to the petitioner the sum of $209, which sum had been deposited with said commissioners by the schooner "Alice Holbrook" as the pilot's fees for bringing said schooner into and out of the harbor over which the said commissioners preside.    The Circuit Judge, on the 29th March, 1901, issued a rule to said board of commissioners, requiring them to show cause why a peremptory writ of mandamus should not issue to require them to pay the petitioners said pilot's fees.    The said board of commissioners made the following return to said rule (omitting the caption) :

"Geo. P. Elliott, C. F. Goodwin, B. B. Chadwick and Robert Mare, commissioners of pilotage of Beaufort, upon whom has been served an order to show cause herein, for cause showeth : That when they entered upon the duties of such commissioners they found the pilotage service in a badly disorganized condition; many of the bonds of the pilots were worthless, and all were in an unsatisfactory and insufficient condition.    Thereafter, on the 1st of January, 1900, after carefully reviewing the situation and conferring with the various pilots, it was deemed advisable to require the bonds of all the pilots and their licenses to be renewed, and to that end the board adopted the following motion : 'On motion of Capt. Goodwin, the secretary was instructed to notify the pilots to renew their bonds and licenses at once.' All of the pilots promptly complied except Agapito de Zabaljauregui.    On the 16th October, 1900, the said Agapito de Zabaljauregui, not having yet complied with the requirements of the board as above stated, the secretary was instructed to notify him that he must at once renew his license, and he was thereupon personally notified by the chairman of the board, Geo. P. Elliott.    On the 6th day of March, 1901,

Pilot James B. Evans, in charge of pilot boat No. 5, reported to the board that Agapito de Zabaljauregui, on the 24th day of February, 1901, not having a license so to do, had boarded the schooner 'Alice Holbrook' and piloted her into this port, and he claimed the pilotage fees therefor on behalf of James O'Brien, one of the pilots attached to boat No. 5, who had spoken and claimed the vessel first, after finding Agapito de Zabaljauregui illegally aboard of her.    Notice of the claim filed by Pilot Evans was given to Agapito de Zabaljauregui, and on the 25th day of March, 1901, he appeared before the board, and through Thomas Talbird, Esq., as his attorney, filed an answer in conjunction with Pilot John Murray, who then for the first time advanced any claim. All parties were before the board and a full hearing of the matter was had.    The board found as follows: That Agapito de Zabaljauregui, on the 24th day of February, 1901, when he boarded the schooner 'Alice Holbrook' and proceeded to bring her into port, did not have a license, and was disqualified to act as a pilot.    That Pilot John Murray, claiming to be a partner of Agapito de Zabaljauregui, and knowing him to be illegally aboard of said schooner, made no report of the matter and took no steps to claim the pilotage fees.    On the contrary, endeavored to cover up the violation of law on the part of his partner, and enable him to obtain the benefit of his illegal conduct; and only after he found the matter had been reported and the pilotage fees claimed by another, he then seeks to make a claim.    That James O'Brien was the duly licensed pilot who spoke outside and claimed said schooner, after finding Agapito de Zabaljauregui illegally aboard of her.    Upon this state of facts found by the board, they on the 25th March, 1901, decided that the pilotage fees of the schooner 'Alice Holbrook' inward and outward, are due to pilot boat No. 5, Capt. James Evans, master."    This return was duly verified.

Upon hearing this return and argument thereon, on the 9th day of April, 1901, his Honor, Judge Buchanan, by a short order, directed the writ to issue requiring the said com-

33—62

missioners to pay over to the petitioners the said sum of $209. From this order of Judge Buchanan the commissioners have appealed to this Court on the following grounds:

"I. Because the Circuit Judge erred in finding the relators, Agapito de Zabaljauregui and John Murray, entitled to the pilotage fees of the schooner 'Alice Holbrook.'

"II. Because the Circuit Judge erred in not finding that on the 24th day of February, 1901, when Agapito de Zabaljauregui boarded as pilot the said 'Alice Holbrook' and piloted her in, he, the said Zabaljauregui, was disqualified to act as pilot, and had no right to so pilot said schooner.

"III. Because the fact having been found by the board of pilot commissioners that when Zabaljauregui piloted the schooner 'Alice Holbrook' he was disqualified as pilot, and had no license so to do, it was error in the Circuit Judge to hold him entitled to the fees of pilotage or any part thereof.

"IV. The rights and liabilities of a pilot are individual, and it was error in the Circuit Judge to hold Murray and Zabaljauregui jointly entitled as copartners to the fees.

"V. If Zabaljauregui was entitled to the fees, then surely Murray could not be. Any arrangement they might have had was a personal matter between them, and could not be considered in dealing with them as pilots, and it was error to consider their alleged partnership, and hold Murray jointly entitled.

"VI. If Zabaljauregui was disqualified, and so not entitled to the fees, Murray certainly had no claim to them or any part of them, the evidence showing that he never sought to claim the schooner as rightful pilot. On the contrary, that his entire effort was to protect Zabaljauregui and cover up his illegal conduct."

We will now examine these exceptions. The first exception is too general to be noticed by us.

We will examine the other exceptions in a group. The regulations of pilotage in this State may be found in Rev. Stat. 1893, sections 1357 to 1388, inclusive. The board of commissioners of pilotage for Beaufort is composed

of four members.   Liberal power is bestowed upon such board.   As such board they had the power to require pilots to give new bonds, finding many of such bonds defective.   The petitioner, Agapito de Zabaljauregui, was twice notified by the board to give a new bond as a pilot, on the penalty of being suspended from his office.   He failed or refused to give the bond.   His license was thereby revoked.   Sec. 1376 especially forbids any one to bring in or carry out of a port any vessel unless he has a license as such pilot.   This being so, although the said Agapito de Zabaljauregui first reached and boarded the schooner "Alice Holbrook" and brought her into port, he was not entitled to compensation therefor, because his license had been annulled by the board of commissioners by their resolution, of which he was twice notified; his copetitioner, James Murray, can take no benefit therefrom.   The Circuit Judge erred in holding that the petitioners were entitled to these pilotage fees. The board of commissioners correctly decided that Pilot James B. Evans was entitled to these fees, for he was the first licensed pilot to reach the schooner "Alice Holbrook." The law and practice as to pilots in this State is well considered in the opinion filed by Chief Justice McIver, in the case of *O'Brien* v. *Larrinaga,* 49 S. C., 497.   The principles therein fixed rule this case.   The exceptions as grouped are well taken.

It is the judgment of this Court, that the judgment of the Circuit Court is reversed and the cause is remanded to the Circuit Court, for an order there to be made directing the board of pilot commissioners for Beaufort to pay the $209 to Pilot Captain James B. Evans.